OPINION
On February 5, 1996, the Knox County Grand Jury indicted appellant, Howard Fuson, on three counts of rape in violation of R.C. 2907.02(A)(1)(b). Each count contained a force specification pursuant to R.C. 2907.02(B). Said charges arose from incidents involving appellant's three daughters, Melissa born May 31, 1982, Amy born October 23, 1985 and Vanessa born November 13, 1986.
A jury trial commenced on October 15, 1996. The jury found appellant guilty as charged. By journal entry filed October 31, 1996, the trial court sentenced appellant to three concurrent life terms.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED IN FAILING TO REQUIRE THAT THE KNOX COUNTY DEPARTMENT OF HUMAN SERVICES, CHILDREN'S SERVICES, PRODUCE THE RECORDS OF ITS INVESTIGATION OF DEFENDANT/APPELLANT.
II
 THE TRIAL COURT IMPROPERLY PERMITTED WITNESSES TO PROVIDE TESTIMONY AS TO THE VERACITY OF THE CHILD WITNESSES IN DIRECT CONTRAVENTION OF THE RULE ARTICULATED IN STATE V. BOSTON (1989), 46 OHIO STATE 3D 108.
III
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.
 I
Appellant claims the trial court erred in failing to order the Knox County Department of Human Services (hereinafter "DHS") to produce its investigation records.
By subpoena filed August 22, 1996, appellant requested DHS's "records in their entirety as they relate to Howard, Tammy, Melissa, Amy or Vanessa Fuson." On October 15, 1996, DHS filed a motion in limine as to the requested records claiming the records were confidential as a matter of law. DHS requested the trial court review the requested records prior to determining whether the records would be available to the defense. The trial court never ruled on this motion.
During the course of the trial, defense counsel again requested the records in order to attack the credibility of Lori Roberts, an investigator with DHS who had testified in the state's case-in-chief (T. at 545-598). Defense counsel argued Ms. Roberts was unsure of the dates she had talked to Melissa about the charges and was unsure of what Amy had told her about some panties. T. at 833-834.[1] The trial court denied the request and suggested defense counsel recall Ms. Roberts to the stand. T. at 837. Defense counsel never recalled Ms. Roberts.
Pursuant to Crim.R. 16(B)(1)(g), a party is entitled to an incamera inspection of a witness' written or recorded statement to determine inconsistencies and is entitled to the statement for cross-examination purposes if inconsistencies are found. Subsection (B)(2) lists the information not subject to disclosure as follows:
 (2) Information Not Subject to Disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case or of statements made by witnesses or prospective witnesses to state agents.
Pursuant to Evid.R. 612, a party is entitled to an in camera
inspection of a writing if a witness uses it to refresh memory:
 Except as otherwise provided in criminal proceedings by Rules 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal.
We note no request was made for an in camera inspection either during Ms. Roberts's testimony or at the conclusion of her direct testimony.
The confidentiality argument raised in DHS's motion in limine is governed by R.C. 5153.17. This issue has been addressed by the Supreme Court of Ohio in State ex rel. Renfro v. Dept. of HumanServ. (1990), 54 Ohio St.3d 25, wherein the court at 29 held as follows:
 Certainly, the confidentiality promised by R.C. 5153.17
is not absolute. Even so, keeping foster care records confidential, not disclosing them, is respondent's primary responsibility under the statute. This is particularly true when the records include a child abuse investigation report. R.C. 2151.421(H)(1).
The proper procedure in determining the availability of confidential records is for the trial court to conduct an incamera inspection to determine relevancy and necessity, and whether the admission of the records outweighs the confidentiality considerations of R.C. 5153.17. State v. Hart (1988), 57 Ohio App.3d 4;Pennsylvania v. Ritchie (1987), 480 U.S. 39. The trial court did not follow this procedure and appellant did not proffer the records for appellate review for a determination of whether the Ritchie test was met and if there was relevant evidence contained in the records.
Without a proffer of the records, we are unable to review the trial court's denial of the records into evidence via the records custodian as requested by defense counsel. We are unable to determine if the trial court's failure to conduct an in camera
inspection created a prejudice to appellant. Therefore, pursuant to Ritchie we remand the case for the trial court to examine the requested records and determine if the records contain information that probably would have changed the outcome of the trial. If the records contain no such information or if the nondisclosure was harmless beyond a reasonable doubt, the trial court is instructed to so enter a finding. If the nondisclosure would have affected the outcome of the trial beyond a reasonable doubt, the trial court is instructed to vacate the conviction and order a new trial.
Assignment of Error I is remanded.
 II
Appellant claims the trial court erred under the authority ofState v. Boston (1989), 46 Ohio St.3d 108, and its progeny when it permitted Lee Budin, M.D. and Ms. Roberts to testify as to the veracity of the children's statements. We disagree.
Dr. Budin, a pediatrician who qualified as an expert in the diagnosis of child abuse (T. at 274-275), was permitted to testify to the factors commonly seen in child abuse victims (T. at 277-283), about sexual perpetrators (T. at 283-285), and about recantation as a common occurrence in sexual abuse cases. T. at 286. The remainder of Dr. Budin's testimony was on his physical examinations of Vanessa and Amy and his findings relating to sexual abuse.
Ms. Roberts also testified to the factors commonly seen in child abuse victims (T. at 547-549), recantation (T. at 550) and multiple sexual perpetrators in families (T. at 551), and testified the children's stories have been reasonably consistent throughout except Melissa at one point recanted and then changed that story. T. at 557.
In Boston, the child victim could not and did not testify. A specialist in child sexual abuse who examined the child testified the child was not falsifying the story, and concluded the child was a victim of sexual abuse. The Supreme Court of Ohio in its syllabus held "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."
Neither Dr. Budin nor Ms. Roberts testified as to the veracity of the children's statements. Ms. Roberts's testimony was offered after each child had already been examined and cross-examined. Ms. Roberts did not testify that in her opinion the children had been abused, but only on the allegations investigated. Dr. Budin's testimony was offered after the testimony of Vanessa and Amy. Dr. Budin did not render an opinion as to the truthfulness of the children's statements as to who abused them, but only as to the actual physical findings indicating abuse.
The testimony on child abuse manifestations was not linked to any particular child except on the issue of recantation. Melissa had been examined and cross-examined on the change of her story. T. at 360, 378, 380. As we stated in State v. Kelly (1994),93 Ohio App.3d 257, Boston does not apply when the child victim actually testifies and is subjected to cross-examination. The testimony about child abuse factors was separate and apart from the testimony on the investigation.
We find generic testimony about child abuse manifestations not to be within the purview of Boston nor a violation of Evid.R. 701. These factors are clearly beyond the general knowledge of a juror and are helpful for a clear understanding of the testimony or a determination of a fact in issue i.e., Melissa's credibility.
Assignment of Error II is denied.
 III
Appellant claims his trial counsel was ineffective. We disagree.
The standard this case must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, 142, cert. denied110 S.Ct. 3258. Appellant must establish two criteria:
 1) [C]ounsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition,
2) [P]rejudice arises from counsel's performance.
In order to warrant reversal, appellant must establish ". . . but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington
(1984), 466 U.S. 668, 696. This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388.
As noted in Assignment of Error I, the failure to provide anin camera inspection has not attributed to the prejudice of appellant.
Appellant complains in his brief at 10-11 about defense counsel's choice of certain witnesses called in his defense:
 For example, counsel called Christine Purdy, a person under indictment for sexually abusing the Fuson children after having reason to know that she would invoke her right against self-incrimination and provide no exculpatory testimony. (T. 777). He also called a character witness with a criminal record of drug possession to vouch for Defendant/Appellant's character and another witness who had been arrested for possession of drugs in the last year. (T. 752, 816). He called three witnesses who did not even know the children or Mr. Fuson. (T. 619, 661-64, 673). He failed to object to testimony regarding the Defendant/Appellant's alleged homosexual conduct. (T. 431).
If the only persons one associates with are of questionable character, counsel in amounting a defense has very little to choose from. A witness who exercises the right against self-incrimination under the Fifth Amendment shifts the specter of guilt away from the accused. Further, testimony of homosexual activity is contrary to the clearly heterosexual activities claimed by the children.
Given the clear testimony of the three children identifying their father as the one who molested them, we find the disputed testimony to not have effectuated an undue prejudice to appellant's case.
Assignment of Error III is denied.
The judgment of the Court of Common Pleas of Knox County, Ohio is hereby affirmed in part and remanded.
By Farmer, P.J., Gwin, J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Knox County, Ohio is affirmed in part and remanded to said court for further proceedings consistent with Assignment of Error I.
[1] The state agreed to stipulate to the correct dates. T. at 835.